

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*



FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2017 JUL 25  PM 5: 16

CLERK'S OFFICE
AT BALTIMORE

          DEPUTY

Leo J. Wise
Assistant United States Attorney
Leo.Wise@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4909
MAIN: 410-209-4800
FAX: 410-962-3091

June 7, 2017

Steven Wrobel, Esq.
107 Ridgely Ave. Suite 9
Annapolis, MD 21401-1417

484

Re: *United States v. Tyeacha Thomas Counts*, Cr. No. 16-~~485~~

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have her execute it in the spaces provided below. If this offer has not been accepted by June 8, 2017, it will be deemed withdrawn. The terms of the agreement are as follows:

<u>Offense of Conviction</u>

1. The Defendant agrees to plead guilty Count One of the indictment now pending against her charging her with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d). The Defendant admits that she is, in fact, guilty of that offense and will so advise the Court.

2. The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

    a. First, that an enterprise existed as alleged in the indictment;

    b. Second, that the enterprise affected interstate or foreign commerce;

    c. Third, that the defendant was associated with or employed by the enterprise;

    d. Fourth, that the defendant knowingly and willfully became a member of the conspiracy.

Revised 11/5/09

## Penalties

The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: a 20-year term of incarceration, 3 years of supervised release and a fine of fine not more than twice gross proceeds derived from the offense. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order her to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if she serves a term of imprisonment, is released on supervised release, and then violates the conditions of her supervised release, her supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

3. The Defendant understands that by entering into this agreement, she surrenders certain rights as outlined below:

    a. If the Defendant had persisted in her plea of not guilty, she would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

2

wanted to call witnesses in her defense, however, she would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in her own defense if she so chose, and she would have the right to refuse to testify. If she chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from her decision not to testify.

e. If the Defendant were found guilty after a trial, she would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against her. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that she may have to answer the Court's questions both about the rights she is giving up and about the facts of her case. Any statements the Defendant makes during such a hearing would not be admissible against her during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find her guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

i. The Defendant recognizes that if she is not a citizen of the United States, pleading guilty may have consequences with respect to her immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including her attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that she wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

4. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and

3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

5. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt, and to the following

    a. A base offense level (§ 2E1.1(a)(1)) for Racketeering Conspiracy of 19.
    b. A three level downward departure for a role in the offense between a minor and minimal participating

6. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent recognition and affirmative acceptance of personal responsibility for her criminal conduct.

7. This Office will make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of her intention to plead guilty. This Office may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about her involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw her plea of guilty.

8. The Defendant understands that there is no agreement as to her criminal history or criminal history category, and that her criminal history could alter her offense level if she is a career offender or if the instant offense was a part of a pattern of criminal conduct from which she derived a substantial portion of her income.

9. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute. The Defendant and this Office have reserved the right to argue for any factor under 18 U.S.C. § 3553(a) that could take the sentence outside of the advisory guidelines range.

## Obligations of the United States Attorney's Office

10. At the time of sentencing, this Office will recommend a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a), and will move to dismiss any remaining counts pending against the Defendant.

11. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including any uncharged conduct.

## Waiver of Appeal

12. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

    b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed, including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised.

    c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

    d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

13. The Defendant agrees that she will not commit any offense in violation of federal, state or local law between the date of this agreement and her sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for her conduct by failing to acknowledge her guilt to the

probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that she may not withdraw her guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

14. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw her guilty plea, and will remain bound to fulfill all of her obligations under this agreement. The Defendant understands that neither the prosecutor, her counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

15. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Leo J. Wise
Robert R. Harding
Daniel C. Gardner
Assistant United States Attorneys

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

6-7-17
Date

_____
Tyeacha Thomas Counts

I am the Defendant's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with her. She advises me that she understands and accepts its terms. To my knowledge, her decision to enter into this agreement is an informed and voluntary one.

7 Ju 17
Date

_____
Steven Wrobel, Esq.

7

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2017 JUL 25 PM 5: 16

CLERK'S OFFICE
AT BALTIMORE

BY ____ DEPUTY

## ATTACHMENT A
## STATEMENT OF FACTS

It is agreed and stipulated that were the Government to proceed to trial in this case, it would prove, beyond a reasonable doubt, by admissible testimonial and documentary evidence the guilt of the Defendant on the charges of racketeering conspiracy, in violation of 18 U.S.C. § 1962(d).

The Defendant agrees to the truth of the summary of evidence set forth below and acknowledges that it does not represent all the evidence the Government would have produced had the case proceeded to trial.

The defendant Tyeacha Thomas Counts is married to inmate co-defendant Michael Counts, an inmate at the Eastern Correctional Institution (ECI) a Maryland prison located near Westover, Maryland, on Maryland's Eastern Shore. ECI constituted an "enterprise," as defined in Title 18, United States Code, Section 1961(4). ECI engaged in, and its activities affected, interstate commerce.

Michael Counts and his cellmate and co-defendant Travis Gie bribed correctional officer co-defendant DAVID HEARN to smuggle contraband, including tobacco, into ECI in exchange for bribes. Counts and Gie then sold the contraband to other inmates.

The Defendant facilitated Counts's contraband trafficking by collecting the proceeds of his illegal contraband sales. For example, on July 14, 2015, the Defendant received a $50 money order from Ishahaunda Brandon, whose cousin, Glen Brandon, was an inmate at ECI; on August 2, 2015, the Defendant received a $50 money order from Renee Smith, an associate of ECI inmate Michael Johnson; and on August 8, 2015, the Defendant received a $200 money order from Kris Clark, the mother of ECI inmate David Clark.

Law enforcement intercepted communications to and from a contraband cellular telephone that Counts possessed and used in furtherance of the racketeering conspiracy charged in this case. On August 2, 2015, at 3:58 p.m., Counts sent a text message to the Defendant that he intended to send to one of his co-conspirators. In it he wrote, "Yo im calling to see if u took care of that for me? If not dnt worry about it just take it back to my grandmother house so I can get that done. This is a rush job homeboy i got the lawyer and the horse breathing down by neck about some money and I dnt want to lose either one." One minute later, he again sent a text message to the Defendant that he intended to send to one of his co-conspirators. In that text he wrote, "I need u to take that over there today. Im trying to get something sent off tomorrow." At 4:15 pm, that same day, the Defendant texted Michael Counts the following, "Baby what's going on with all this u text to this guy and who's the horse and who u not trying to loose. U not telling me something." Two minutes later the Defendant texted Counts, "What is really going on" and then almost immediately after send that text she texted him, "Plz explain NOW I need answer." Michael Counts then sent the Defendant a series of text messages in which he told her, "Im talking about the way I said that I was going to help pay the lawyer" and "I told u about the tobacco that I ordered with the green dot card." The Defendant then texted Counts, "Who is

breathing down your back," and Counts sent a text message one minute later in which he wrote, "The horse is the guy that is going to bring it to me," to which the Defendant replied, "ok" and "That's it" and "Ok Michael." Several minutes later Counts texted her, "Im just trying to get my man to send the tobacco so off asap so that I can start sending u ths money. That why I had u get the paypal card."

On August 16, 2015, law enforcement intercepted a telephone conversation between the Defendant and Counts. In this call, Counts told the Defendant that he had been temporarily removed from his cell and that, "Whatever happens to me. If I get rolled out the jail. What ever. If I just stop doing you know. It ain't gonna be no after me cause You not gonna deal with nobody else," to which the Defedant responded "who" and Counts replied, "the officer."

Counts was subsequently removed from his cell permanently because the Intelligence Department at ECI intercepted a note that indicated that Counts was attempting to collect information on a correctional officer's family as part of an effort to physically assault that officer's family and other officer's family. After learning of this, the Defendant sent a series of text messages to Gie, who continued to maintain the contraband phone that he and Counts previously shared before Counts was moved out of their cell, in which she asked him,

> Hello can u delete this message but he really didn't want me to give any info threw the phone it's a lot it's a letter that was sent to Intel about him knowing about a hit being put on like 4 officers something of a gang member suppose to wrote the letter_ But it's not his hand writing it's crazy but he's still sitting over there until they find out who wrote the letter . So he don't want me to text this number I don't know what to tell u to do with the phone all the info they saying the person said to check on face book all the info on there matches in the_Delete everything out the phone pls don't forget

GIE responded, "I got u."

The defendant agrees that she associated with the enterprise described in the indictment and knowingly became a member of the conspiracy described in the indictment.